THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* TERRENCE SMITH, Defendant-Appellant.

(No. 55280;

First District—September 20, 1972.

Gerald W. Getty, Public Defender, of Chicago, (Judith Smith Leland and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane, Zenon Forowycz, and James Truschke, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE ADESKO delivered the opinion of the court:

After a jury trial, Terrence Smith was found guilty of voluntary manslaughter. The trial court sentenced the defendant to the Illinois State Penitentiary for a period of not less than 15 years and not more than 20 years. On appeal defendant contends that:

 1. He was not proven guilty of voluntary manslaughter beyond a reasonable doubt;

 2. Failure of his counsel to tender an instruction on self-defense amounted to incompetency of counsel and deprived defendant of a fair trial; and

 3. The sentence of 15 to 20 years was excessive.

The facts are as follows:

The defendant, who was married, had dated Dorothy McBride for approximately one year. About four weeks before the stabbing they had a violent argument at which time Mrs. McBride was beaten. Mrs. McBride testified that she had not seen, talked to, or called the defendant from the time of the argument until he appeared uninvited in her apartment on July 29, 1968. On July 29, 1968, Mrs. McBride returned to her apartment with David Taylor. Taylor sat in a swivel chair approximately 10 feet from the television. While Mrs. McBride was talking to Andrew Jefferson on the telephone, the defendant walked from the dark porch into the living room and grabbed Taylor by the collar and stabbed him in the neck. Taylor's death was due to loss of blood and from a stab wound of the left neck, the left carotid artery and left jugular vein. Mrs. McBride testified that the deceased had no weapon and that he did not resist defendant's attack.

Mrs. McBride's son, Jeffery who witnesssed the attack, corroborated Mrs. McBride's testimony concerning the attack. Jeffery also testified that he saw the defendant hiding on the dark porch and that the defendant told him to be quiet. As the defendant walked into the apartment, Jeffery saw a knife in his hand which was hidden behind his back.

Andrew Jefferson testified that he overheard the defendant speak threateningly as Jefferson was speaking to Mrs. McBride on the telephone. Jefferson also testified that he heard Mrs. McBride say "don't

fight in the apartment, go downstairs." Jefferson further testified that Mrs. McBride asked him to call the police.

Officers Hollins and Wood testified that there was no blood near where the television stood. Officer Wood further testified that there was blood on the walls by the swivel chair.

Defendant, testifying on his own behalf, stated that he visited Mrs. McBride on July 29, 1968, because she left a telephone message for him on July 28, 1968, with Inez Watts, his livery company's dispatcher. Inez Watts corroborated defendant's testimony concerning Mrs. McBride's telephone message.

Defendant further testified that Taylor was the aggressor and had started to choke him for no reason. Defendant stated that he grabbed a knife which was on top of the television and swung it at Taylor to protect himself.

Defendant's first contention on appeal was that he was not proven guilty of voluntary manslaughter beyond a reasonable doubt. Defendant claims that he stabbed the deceased in self-defense. The court in *People v. Johnson*, 108 Ill.App.2d 150, 247 N.E.2d 10, at page 156 said:

> "It is not our function to substitute our judgment for that of the jury since whether a killing was justified under the law of self-defense is a question of fact for the jury (*People v. Johnson*, 2 Ill.2d 165, 117 N.E.2d 91; *People v. Owens*, 73 Ill.App.2d 108, 219 N.E.2d 733) and when, as here the evidence is conflicting, it is the function of the trier of fact to resolve the conflict and determine the credibility of the witnesses. *People v. Sudduth*, 14 Ill.2d 605, 153 N.E.2d 557."

■■ There were sharp conflicts between the defendant's testimony and that of the two eye-witnesses. Defendant testified that the deceased was the aggressor, but the eye-witnesses stated that the defendant was the aggressor. Defendant testified that he found the knife on the television, but Jeffery testified that he saw the defendant enter the apartment with the knife behind his back. Defendant testified that he stabbed the deceased near the television. The eye-witnesses testified that the deceased was stabbed near the swivel chair and two police officers testified that there was blood on the wall near the swivel chair. Here, the jury believed most of the testimony of the State's witnesses and rejected the contrary account of the stabbing by the defendant. The jury may always believe as much or as little as they please of a witness' testimony. *People v. Warren*, 33 Ill.2d 168, 210 N.E.2d 507.

■■ Whether a killing is justified under the law of self-defense is always a question of fact for the jury to decide and once the jury has reached

a verdict we will not disturb that finding unless the evidence is palpably contrary to the verdict or so improbable, or unsatisfactory that it justifies entertaining a reasonable doubt of defendant's guilt. *People v. Jordan*, 18 Ill.2d 489, 165 N.E.2d 296.

■■ We hold that in the instant case, there was sufficient evidence presented by the State to convict the defendant of voluntary manslaughter. The deceased was unarmed and weighed only 151 pounds. Defendant, a married man, had not been invited to Mrs. McBride's apartment. He stated that the deceased choked him and therefore he fatally stabbed the deceased in self-defense. There was sufficient evidence introduced that defendant, despite his fear of bodily harm, acted unreasonably under the circumstances. Under these circumstances, the jury could have justly determined that defendant may have believed that his use of deadly force was necessary in his own defense, but that such belief was unreasonable.

Defendant's second contention on appeal was that the failure of his counsel to tender an instruction on self-defense amounted to incompetency of counsel and deprived defendant of a fair trial.

Defendant's jury instruction No. 3 was given and stated:

"To sustain the charge of voluntary manslaughter the State must prove the following propositions:

First: That the defendant intentionally or knowingly performed the acts which caused the death of David Taylor; and

Second: That when the defendant did so he believed that circumstances existed which would have justified killing David Taylor; and

Third: That the defendant's belief that such circumstances existed was unreasonable; and

Fourth: That the defendant was not justified in using the force which he used.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant not guilty."

The State's jury instruction No. 11 was given and stated:

"A person commits the crime of voluntary manslaughter who intentionally or knowingly kills another if, at the time of the killing, he believes that circumstances exist which would justify the killing, but his belief that such circumstances exist is unreasonable."

■■ Defendant's jury instruction No. 3 included the elements of self-defense. The fourth clause of defendant's instruction No. 3 was sufficient as a self-defense instruction to the jury. Furthermore, State's jury instruc-

tion No. 11 was based substantially on the statutory definition of voluntary manslaughter. (Ill. Rev. Stat. 1969, ch. 38, par. 9—2(b).) We conclude that defendant's jury instruction No. 3 was definitive of self-defense and sufficiently advised the jury of the element of self-defense.

■■ Defendant was represented by private counsel. Where a defendant in a criminal case employs private counsel, his conviction will not be reversed merely because his counsel failed to exercise the greatest skill or for the reason that it might appear, in looking back over the trial, that he had made some tactical blunder. (*People v. Stephens*, 6 Ill.2d 257, 128 N.E.2d 731.) A conviction will not be reversed for incompetency of private counsel unless it can be said from the record that the representation was of such low caliber as to amount to no representation at all, or that it was such as to reduce the trial to a farce. (*People v. Strader*, 23 Ill.2d 11, 177 N.E.2d 126.) We find from an examination of the record that the defense conducted by defendant's counsel was without prejudicial error and that the defendant received a fair trial.

■■ Defendant's third contention was that the sentence of 15 to 20 years was excessive. The defendant took a human life with a lethal weapon. The sentence is within the limits prescribed by the Legislature for voluntary manslaughter. (Ill. Rev. Stat. 1969, ch. 38, par. 9—2(c).) The sentence is not at variance with the purpose and spirit of the law or in excess of the proscriptions found in the Illinois Constitution. (*People v. Taylor*, 33 Ill.2d 417, 424, 211 N.E.2d 673; *People v. Miller*, 33 Ill.2d 439, 444-445, 211 N.E.2d 708.) Thus, the sentence will not be reduced.

For the reasons given, the judgment of the Circuit Court of Cook County is affirmed.

Judgment affirmed.

DIERINGER, P. J., and BURMAN, J., concur.