THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CLYDE HEIPLE, JR., Defendant-Appellant.

(No. 73-32;

Fifth District—June 13, 1975.

Paul Bradley and Allen L. Wiederer, both of State Appellate Defender's Office, of Chicago, for appellant.

Michael K. Grabowski, State's Attorney, of Pinckneyville (William B. Starnes, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal by the defendant, Clyde Heiple, Jr., from a judgment of conviction entered on a jury verdict of guilty to the offense of burglary by the circuit court of Perry County and the imposition of a sentence of not less than 2 years' nor more than 6 years' imprisonment.

■■ The defendant's sole contention on appeal is that the "defendant's conviction of burglary with intent to commit theft should be reversed because the evidence fails to establish the requisite beyond a reasonable doubt." More particularly, the defendant claims that "his intoxicated condition rendered him incapable of forming the requisite intent to commit a theft" or, alternatively, "that the evidence nonetheless fails to establish his intent to commit a theft."

Section 6—3 of the Criminal Code (Ill. Rev. Stat. 1969, ch. 38, par. 6—3) provides, in part, that,

"A person who is in an intoxicated or drugged condition is criminally responsible for conduct unless such condition either:

(a) Negatives the existence of a mental state which is an element of the offense; or

(b) Is involuntarily produced and * * *."

In other words, voluntary intoxication is no excuse for the perpetration of a criminal act; however, it may be used to negate intent where the intoxication is so extreme as to suspend all reason and make impossible the existence of a mental state which is an element of the crime. *People v. Walcher,* 42 Ill.2d 159, 246 N.E.2d 256; *People v. Smith,* 26 Ill.App.3d 1062, 325 N.E.2d 623; *People v. Moore,* 23 Ill.App.3d 212, 318 N.E.2d 676; *People v. Huggy,* 19 Ill.App.3d 247, 311 N.E.2d 355.

The issue is one to be resolved by the jury, as is the issue of credibility of the defendant as well as the other witnesses who testified. (See *People v. Smith,* 26 Ill.App.3d 1062, 325 N.E.2d 623.) The jury in the instant case was properly instructed on the offense of burglary and the lesser offense of criminal damage to property. The jury returned guilty verdicts to each of these offenses. Due to the fact that the offenses "were so closely related in time" the trial court sentenced the defendant on the burglary only. The record here establishes that the jury was warranted in finding that the defendant's acts constituted the offense of burglary.

The defendant does not dispute the fact that he was discovered inside a store owned by Avey Woodside at approximately 1:45 A.M. on June 20, 1969. Nor is there any dispute that entry was gained by way of a broken window. Instead, the defendant claims that "his intoxicated condition rendered him incapable of forming the requisite intent to commit a theft."

Our review of the defendant's defense of intoxication focuses initially on the testimony of George Heiple (the defendant's uncle), Lina Heiple (the defendant's wife), and the defendant, all of whom testified that the defendant was either "pretty drunk" or "really drunk" on the night in question. The defendant testified that he could not remember anything about his entrance into Avey Woodside's store or the events immediately

preceding such entrance, and can only recall events transpiring after he was taken into custody by police officers.

Conflicting with the foregoing testimony concerning the defendant's inebriated condition was the testimony of Norman Vogel, Deputy Sheriff Wilbur McCrary, Avey Woodside and Trooper Carlos Tolbert. Norman Vogel, who reported the break-in, and Deputy McCrary testified that the defendant was able to crawl out the broken window of Woodside's store without any trouble or assistance. Deputy McCrary testified that he did not notice anything unusual about the defendant's appearance or actions. McCrary couldn't say if the defendant had been drinking. Likewise, Avey Woodside was unable to determine if the defendant had been drinking. Norman Vogel testified that he would say the defendant had been drinking from the defendant's loud speech. Trooper Tolbert testified that he could tell that the defendant had been drinking because of some of his actions and the smell of an intoxicant. Nevertheless, he did not think the defendant was drunk. While he acknowledged that he did not administer any tests to determine the degree of the defendant's intoxication, he testified that the conversation he had with the defendant at the scene of the crime failed to reveal any indication that the defendant was intoxicated.

■ In this case there is little question that the defendant was drinking; however, it is less than clear whether the defendant was intoxicated. The defendant admitted that he drank voluntarily. Under these circumstances it was for the jury, as the triers of fact, to determine not only the credibility of the witnesses, but, ultimately, if the defendant's degree of intoxication had advanced to the stage where it suspended all of the defendant's power to reason and made it impossible for the defendant to entertain the requisite element of intent to commit a theft. (See *People v. Smith*, 26 Ill.App.3d 1062, 325 N.E.2d 623.) From the foregoing review of the record we cannot say that the jury's determination that the defendant was not intoxicated to so great a degree was in error.

Similarly, we find the evidence proffered in the trial court sufficient to sustain the jury's conclusion that the defendant entered Woodside's store with the intent to commit a theft. While the defendant testified that he was unable to remember the events immediately preceding his entry into Woodside's store, he did testify that Nickelson, who emerged from the store building at the same time as defendant, rented from Avey Woodside and owed him money for back rent, groceries, and a door into which Nickelson had fired a shotgun. Defense counsel directed his closing remarks to the argument that while the defendant may have been guilty of criminal mischief to property he did not enter the building with the

intent to commit a theft. We would be inclined to agree with the defendant but for the testimony of Avey Woodside and Norman Vogel.

Norman Vogel testified that on the morning in question he was sleeping in the living room of his father's house which was approximately 50 yards south of Avey Woodside's store. Upon being awakened by the sound of glass breaking, he looked out his window and observed two figures running in a westerly direction from the Woodside store. Five or ten minutes later he observed the figures return from the west, at which time he telephoned the sheriff's office in Perry County.

After the defendant had been ordered out of the store by Deputy McCrary and taken into custody, Avey Woodside, the owner of the store, was notified. He testified that he arrived and opened the front door of the store. Various things had been scattered on the floor. The glass was broken out of two showcases, but none of the merchandise had been removed. Woodside never was able to determine if any merchandise had been taken. He did, however, discover a paper sack containing change on a counter in the store. He testified that he usually put the change in a sack and hid it near the cash register when he closed the store. While he could not remember where he had hidden the sack on this particular night, he was "sure" that he had hidden it. Woodside further testified that when he entered the store the cash register was open. He had closed the cash register when he had left the store the previous evening. The witness identified People's Exhibit No. 2 as a photograph depicting the change sack on the counter where it was discovered. On cross-examination the witness testified that he was "absolutely sure" that he had not left the change sack on the counter.

■■ In view of the above testimony by Woodside and Vogel we find that the jury was justified in returning a guilty verdict to the charge of burglary. In particular, we reject the defendant's argument that "the evidence in the case at bar indicated that the premises were entered not for the purpose of committing theft, but for the inconsistent purpose of vandalizing the store." (See *People v. Johnson*, 28 Ill.2d 441, 192 N.E.2d 864; *People v. James*, 24 Ill.App.3d 112, 320 N.E.2d 20; *People v. Semma*, 19 Ill.App.3d 776, 312 N.E.2d 746.) As has often been held, intent may be inferred from circumstances that legitimately permit that inference (*e.g.*, *People v. Koshiol*, 45 Ill.2d 573, 262 N.E.2d 446, *cert. denied*, 401 U.S. 978). This court will not substitute its judgment for that of the jury in cases in which the facts could lead to either of two inferences unless the inference accepted by the jury is inherently impossible or unreasonable (*People v. Edwards*, 21 Ill.App.3d 354; *People v. Hister*, 20 Ill. App.3d 933, 314 N.E.2d 562; *People v. Brooks*, 19 Ill.App.3d 808, 313

456

N.E.2d 293). We do not find the inferences the jury drew from the evidence proffered in the trial court either inherently impossible or unreasonable.

Accordingly, we affirm the judgment of conviction entered by the circuit court of Perry County and the sentence imposed thereunder.

Judgment affirmed.

CARTER and KARNS, JJ., concur.