THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* NORMAN COOPER, Defendant-Appellant.

(No. 60366; ▮▮▮▮▮▮▮▮)

First District (4th Division)—September 24, 1975.

Sneider and Troy, of Chicago (James R. Sneider and Gayle F. Haglund, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and James S. Veldman, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE BURMAN delivered the opinion of the court:

By complaint, Norman Cooper, the defendant, was charged with disorderly conduct in that he telephoned Beverly A. Cooper with knowing intent to annoy and disturb her in violation of section 26—1(a)(2) of the Criminal Code. (Ill. Rev. Stat. 1973, ch. 38, par. 26—1(a)(2).) In a bench trial, he was found guilty and ordered to pay a fine of $50 plus

$5 costs. On appeal, three contentions are posited, namely, that (1) the State failed to prove the elements of the offense charged beyond a reasonable doubt, (2) the defendant was convicted of an offense with which he was not charged and (3) section 26—1(a)(2) was unconstitutionally applied to protected speech or behavior.

A review of the record indicates that the defendant was president and co-owner, along with his brother Kenneth Cooper and brother-in-law Harold Terckin, of Architectural Bronze Company located in Skokie, Illinois. On the morning of September 20, 1973, the defendant and Terckin were at work. They decided to call the defendant's brother, who was ill at home, with reference to a particular business matter. The defendant placed the call approximately at 9 a.m., whereupon Beverly Cooper, his sister-in-law, answered while her husband, Kenneth, placed his ear against the phone in anticipation of a call from their doctor. According to their testimony, subsequent to Beverly Cooper picking up the telephone and stating "hello," the defendant immediately bombarded her with abusive and vulgar profanity before asking to speak to his brother. She responded that he was ill in bed with a high temperature. The defendant continued his verbal assault by resorting to other profanity, and when she asked, "Do you know what you have said to me?", the defendant merely hung up the receiver.

The defendant testified on his own behalf and presented a somewhat different account of the instant controversy. He stated that his sister-in-law refused to let him talk to his brother on previous occasions. He further related that when his sister-in-law answered the phone on the day in question, he prefaced his alleged verbal attack by twice requesting to speak to his brother. As a result of her persistence in refusing to allow the defendant to speak to his brother, he became perturbed and resorted to intemperate language, but not the obscene profanity to which he was accused. This testimony was substantiated by the testimony of Harold Terckin, the defendant's brother-in-law, who heard the defendant's end of the conversation on the day in question.

Defendant contends that he was not found guilty of the offense charged beyond a reasonable doubt. We agree and our decision to reverse on that ground makes it unnecessary to consider the other contentions.

Section 26—1(a)(2) of the Criminal Code provides in relevant part:

"(a) A person commits disorderly conduct when he knowingly:

(2) With intent to annoy another, makes a telephone call, whether or not conversation thereby ensues;" (Ill. Rev. Stat. 1973, ch. 38, par. 26—1(a)(2).)

Although this legislative enactment has been the subject of previous litigation (*People v. Gauer*, 7 Ill.App.3d 512, 288 N.E.2d 24; *People v.*

*Wells,* 80 Ill.App.2d 187, 224 N.E.2d 288), judicial resolution of those matters in controversy were based on grounds not pertinent to this case. As such, this case is one of first impression regarding construction of this section and thereby requires both legislative and judicial assistance in ascertaining whether the defendant knowingly made the telephone call with the intent to annoy his sister-in-law.

In determining whether the defendant satisfied the requisite statutory intent to annoy his sister-in-law, section 4—4 of the Criminal Code offers insight when it states:

> "A person intends, or acts intentionally or with intent, to accomplish a result or engage in conduct described by statute defining the offense, when his conscious objective or purpose is to accomplish that result or engage in that conduct." (Ill. Rev. Stat. 1973, ch. 38, par. 4—4.)

Judicial construction of this section has indicated that such criminal intent cannot be implied as a matter of law, but is a matter of fact that can be ascertained from all facets of the case including the words and actions of the accused. (*People v. Semma,* 19 Ill.App.3d 776, 777, 312 N.E.2d 746, 747; *In re Armour,* 15 Ill.App.3d 529, 539, 305 N.E.2d 47, 53, *aff'd,* 59 Ill.2d 102, 319 N.E.2d 496.) While the State acknowledges the above legal tenet, it places heavy emphasis on the verbiage spoken by the defendant as evincing the statutory requisite intent to annoy or harass. Yet, borrowing from judicial interpretations of the disorderly conduct ordinance contained in the Municipal Code of Chicago,[1] it is not the law that every threatening or insulting word (*City of Chicago v. Blakemore,* 15 Ill.App.3d 994, 997, 305 N.E.2d 687, 689; *City of Jacksonville v. Headen,* 48 Ill.App.60, 65) nor an argument per se (*City of Chicago v. Morris,* 47 Ill.2d 226, 231, N.E.2d 1, 3-4) constitute disorderly conduct. Rather, a violation is determined by the reasonableness of the conduct in relation to the surrounding circumstances. *City of Chicago v. Morris.*

In light of the above legal precepts which emphasize consideration of the *entire* circumstances of a disputed matter before adjudicating whether a defendant is guilty of disorderly conduct, the State failed to prove beyond a reasonable doubt that the defendant made the telephone call with the knowing intent to annoy his sister-in-law. The evidence in

---

[1] Municipal Code of Chicago, ch. 193, par. 1, provides:

"A person commits disorderly conduct when he knowingly:

(a) Does any act in such unreasonable manner as to provoke, make or aid in making a breach of peace; or

(b) Does or makes any unreasonable or offensive act, utterance, gesture or display, which, * * *, creates a clear and present danger of a breach of peace or imminent threat of violence;"

.the case at bar clearly established that the defendant called to speak to his brother and not his sister-in-law. It was undisputed that the defendant's purpose in calling was to discuss a particular business matter with his brother. While we do not condone the language used by the defendant, we are satisfied from the record that it emanated from an isolated emotional outburst of a frustrated brother-in-law.

Judgment reversed.

DIERINGER, P. J., and ADESKO, J., concur.